1   MICHAEL C. SULLIVAN (SBN 131817)
    email: msullivan@paulplevin.com
2   AARON A. BUCKLEY (SBN 202081)
    email: abuckley@paulplevin.com
3   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
    401 B Street, Tenth Floor
4   San Diego, California 92101-4232
    Telephone: 619-237-5200
5   Facsimile: 619-615-0700

6   Attorneys for Defendant PACIFIC BELL DIRECTORY

7

8                   UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ANNIE SCIBORSKI, | CASE NO. 08 cv 0878 WQH (RBB) |
| Plaintiff, | **DEFENDANT PACIFIC BELL DIRECTORY'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |
| v. | |
| PACIFIC BELL DIRECTORY and DOES 1 through 25, inclusive, | |
| Defendants. | |

Date:        June 30, 2008
Time:        11:00 a.m.
Courtroom:   4
Judge:       Hon. William Q. Hayes
Trial Date:  None Set

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 1

II.  REMOVAL WAS PROPER BASED ON FEDERAL QUESTION
     JURISDICTION ................................................................................................. 2

     A.   Sciborski's State Law Claims are Preempted Because They Require
          Interpretation of the Collective Bargaining Agreement. ............................ 2

     B.   The Artful Pleading Doctrine Prevents Sciborski from Avoiding
          Federal Jurisdiction. ................................................................................... 3

     C.   Sciborski's Three State Law Claims All Depend on an Interpretation
          of the CBA and are Therefore Preempted by Section 301. .......................... 3

          1.   Sciborski's First Cause of Action for Failure to Pay Wages
               is Preempted by Section 301 ............................................................ 3

          2.   Sciborski's Second Cause of Action for Breach of Contract
               is Preempted by Section 301, since the Only Contract
               Applicable to Her Employment is the CBA. ...................................... 6

          3.   Sciborski's Third Cause of Action for Constructive Discharge
               in Violation of Public Policy is Preempted by Section 301
               Because it also Requires this Court to Interpret the CBA. ................. 6

     D.   The Case Law Cited by Sciborski Does Not Support Remand of
          this Case to State Court. ............................................................................. 7

          1.   *Cramer v. Consolidated Freightways* is Distinguishable
               and Does Not Support Remand of this Case to State Court. .............. 7

          2.   *Lingle v. Norge Div. of Magic Chef* is Similarly
               Distinguishable and Does Not Support Remand of this
               Case to State Court. ......................................................................... 8

          3.   Sciborski's Reliance on *Lividas v. Bradshaw* is Misplaced
               and Does Not Support Remand of this Case to State Court. ............ 10

     E.   There is No Basis for an Award of Attorneys' Fees. ................................... 11

III. CONCLUSION ............................................................................................... 12

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

i

08 cv 0878 WQH (RBB)

# TABLE OF AUTHORITIES

**PAGE**

## FEDERAL CASES

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202 (1985) .................................................................. 2, 9, 11

*Atchley v. Heritage Cable Vision Associates,*
    101 F.3d 495 (7th Cir. 1996) ................................................................. 9

*Coman v. International Playtex, Inc.,*
    713 F. Supp. 1324 (N.D. Cal. 1989) ................................................. 12

*Cramer v. Consolidated Freightways, Inc.,*
    255 F.3d 683 (2001) ........................................................... 2, 5, 7, 8, 9

*Firestone v. Southern Cal. Gas Co.,*
    219 F.3d 1063 (9th Cir.2000) ............................................................... 5

*Hawaiian Airlines, Inc. v. Norris,*
    512 U.S. 246 (1994) ............................................................................. 5

*Hines v. Anchor Motor Freight, Inc.,*
    424 U.S. 554, 96 S. Ct. 1048 (1976) ................................................... 9

*Hom v. Service Merchandise Co., Inc.,*
    727 F. Supp. 1343 (N.D. Cal. 1990) ................................................. 12

*Lingle v. Norge Division of Magic Chef, Inc.,*
    486 U.S. 399 (1988) ................................................... 2, 5, 8, 9, 10

*Lividas v. Bradshaw,*
    512 U.S. 107 (1994) ........................................................................... 11

*McCann v. Alaska Airlines, Inc.,*
    758 F. Supp. 559 (N.D. Cal. 1991) ................................................... 12

*National Metalcrafters v. McNeil,*
    784 F.2d 817 (7th Cir.1986) ................................................................ 5

*Newberry v. Pacific Racing Association,*
    854 F.2d 1142 (9th Cir. 1988) ............................................................ 3

*Olguin v. Inspiration Consolidated Copper Co.,*
    740 F.2d 1468 (9th Cir. 1984) ............................................................ 3

*Penn. Federation of the Brotherhood of Maintenance of Way Employees v.*
    *National R.R. Passenger Corp.,*
    989 F.2d 112 (3d Cir.1993) ................................................................. 5

*People of State of California v. Steelcase, Inc.,*
    792 F. Supp. 84 (C.D. Cal. 1992) ..................................................... 12

*Smith v. Evening News Association,*
　　371 U.S. 195, 83 S. Ct. 267 (1962) ...................................................................... 9

*Stallcop v. Kaiser Foundation Hospitals,*
　　820 F.2d 1044 (9th Cir. 1987) .......................................................................... 2

*Textile Workers Union v. Lincoln Mills of Alabama,*
　　353 U.S. 448 (1957) ........................................................................................ 2

*Truex v. Garrett Freightlines. Inc.,*
　　784 F.2d 1347 (9th Cir. 1985) .......................................................................... 3

*Wheeler v. Graco Trucking Corp.,*
　　985 F.2d 108 (3rd Cir. 1993) .......................................................................... 10

**STATE CASES**

*DFEH v. Verizon California,*
　　108 Cal. App. 4th 160 (2003) .................................................................... 10, 11

*Moreau v. San Diego Transit Corp.,*
　　210 Cal. App. 3d 614 (1989) .......................................................................... 10

*Steinhebel v. Los Angeles Times Communications,*
　　126 Cal. App. 4th 696 (2005) ....................................................................... 1, 4

**FEDERAL STATUTES**

28 U.S.C. § 1447(c) ........................................................................................ 11

**STATE STATUTES**

Cal. Lab. Code § 203 ...................................................................................... 11

**I.**

**INTRODUCTION**

Defendant Pacific Bell Directory's ("PBD") removal of this case was proper because plaintiff Annie Sciborski's complaint requires this Court to interpret the collective bargaining agreement ("CBA")[1] between PBD and the International Brotherhood of Electrical Workers, AFL-CIO Local Union 2139, the union that represented Sciborski during her employment with PBD.

In her motion to remand, Sciborski argues that her complaint does not specifically reference the CBA, so her state law claims can be resolved without interpreting it. Sciborski's argument is fatally flawed for three reasons:

(1)    Although Sciborski craftily avoided mentioning the CBA in her complaint, it is the CBA that specifically provides the procedures for the advancement of commissions, as well as subsequent adjustments to those advances by way of payroll deductions from future commission payments. In her First Cause of Action, Sciborski alleges that PBD made "illegal deductions" to her earned wages in violation of the Labor Code. But PBD contends that the deductions in question were to commission advances not yet earned, a procedure specifically authorized by the CBA and by California law. *See Steinhebel v. Los Angeles Times Communications,* 126 Cal.App.4th 696, 705-06 (2005). Resolving this issue will require this Court to interpret relevant provisions of the CBA.

(2)    Sciborski's Second Cause of Action is for breach of an alleged "contract of employment." The only "contract" that governed Sciborski's employment was the CBA. As a result, adjudicating Sciborski's contract claim will require this Court to interpret the CBA to determine whether any breach occurred.

(3)    Sciborski's Third Cause of Action is for constructive discharge, based on the alleged "illegal deduction" of wages. As noted above, whether there was an "illegal deduction" of wages will require this Court to interpret the CBA. In addition, the

---

[1] A copy of the CBA is attached as Exhibit 1 to the accompanying declaration of Mark Peters.

1  CBA provides detailed procedures for the dismissal of employees, and procedures by

2  which employees and the union may challenge dismissals.  As a result, whether PBD

3  constructively discharged Sciborski will also require this Court to interpret the CBA.

4  **II.**

5  **REMOVAL WAS PROPER BASED ON FEDERAL QUESTION JURISDICTION**

6  **A.     Sciborski's State Law Claims are Preempted Because They Require**

7  **        Interpretation of the Collective Bargaining Agreement.**

8  In her complaint, Sciborski alleges three state law claims: (1) willful refusal to pay

9  wages; (2) breach of contract; and (3) constructive discharge in violation of public policy.

10 Each of these claims is preempted by section 301 of the Labor Management Relations Act

11 (LMRA).

12 Section 301 empowers the United States District Courts to hear suits for any

13 alleged violation of a contract between an employer and a labor organization representing

14 employees in an industry affecting commerce.  Longstanding United States Supreme Court

15 authority holds that there is a broad doctrine of Section 301 preemption with respect to

16 state law claims to ensure that these claims do not interfere with the development and

17 application of a uniform federal common law to govern the nation's labor disputes.

18 *Textile Workers Union v. Lincoln Mills of Alabama*, 353 U.S. 448 (1957).

19 As Sciborski admits in her moving papers, if any state law cause of action requires

20 interpretation of the terms of a collective bargaining agreement, that cause of action is

21 preempted by Section 301.  *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 690

22 (2001); quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988); *see*

23 *also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) [Section 301 preempts state

24 law claims if "resolution of a state-law claim is substantially dependent upon analysis of

25 the terms of an agreement made between the parties in a labor contract"].  Moreover,

26 Section 301 preemption is to be construed broadly, *with all doubts resolved in favor of*

27 *preemption.  Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048 (9th Cir.

28 1987) *cert. denied*, 484 U.S. 986 (1987) ["[a]ll that is required for a cause of action to

1   exist under section 301 is that the suit be based on an alleged breach of contract between

2   an employer and a labor organization and that the resolution of the lawsuit be focused

3   upon and governed by the terms of contract."

**B.      The Artful Pleading Doctrine Prevents Sciborski from Avoiding Federal Jurisdiction.**

6          While Sciborski avoids mentioning the CBA in her complaint, her claims still are

7   preempted.  Under the artful pleading doctrine, a plaintiff may not avoid federal

8   jurisdiction simply by attempting to cast in state law terms a claim that can be made only

9   under federal law. *See, e.g., Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468,

10   1472 (9th Cir. 1984) ["[e]mployees frequently attempt to avoid federal law by basing their

11   complaint on state law, disclaiming any reliance on the provisions of the collective

12   bargaining agreement....  In such cases the 'artful pleading' doctrine requires that the state

13   law complaint be recharacterized as one arising under the collective bargaining agreement.

14   The case may then be removed to federal court and adjudicated under the appropriate

15   federal law."]; *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988)

16   ["[t]he key to determining the scope of section 301 preemption is not based on how the

17   complaint is framed, but whether the claims can be resolved only by referring to the terms

18   of the bargaining agreement."]; *Truex v. Garrett Freightlines. Inc.*, 784 F.2d 1347, 1350

19   (9th Cir. 1985) [A court may look to facts outside of the complaint to determine whether

20   an "artfully pleaded" state claim is in reality a Section 301 claim for breach of the

21   collective bargaining agreement (citation omitted)].

**C.      Sciborski's Three State Law Claims All Depend on an Interpretation of the CBA and are Therefore Preempted by Section 301.**

**1.      Sciborski's First Cause of Action for Failure to Pay Wages is Preempted by Section 301.**

26          Sciborski's claim that PBD failed to pay her earned wages turns on whether PBD's

27   payments to her were "advances" (which were subject to adjustment at a later date), or

28   were instead "earned commissions."  This issue can only be resolved by interpreting the

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

3

08 cv 0878 WQH (RBB)

1  provisions of the CBA.

2      Sciborski acknowledges she was a commissioned advertising sales employee.

3  Complaint at ¶ 6.  As a commissioned employee, any right to commission payments arose

4  solely from the CBA, which contains detailed provisions describing the various types of

5  compensation available to commissioned sales employees, including commissions and

6  bonuses.  CBA at Article 15, pp. 30-57.  Of particular relevance here is Section 15.5 of the

7  CBA at pp. 46-48, which addresses "Commission Adjustments."  Subsection 15.5.1.1

8  provides:

> Given the importance of proper and timely payment of commissions
> to employees, and to avoid any misunderstanding of third parties, the
> parties agree to clarify herein their longstanding intent and practice
> concerning the payment of commissions.  Because commission rates
> and the contract price applicable to a sale may change after the
> employee was advanced a commission and before all conditions have
> been satisfied to earn a commission, commissions are earned by
> employees only when the final commission rate and contract price
> applicable to a sale are determined by the Company, and all of the
> conditions to earn commissions have been satisfied.  **Until the
> commissions are earned, any commission payments made to
> employees under this Agreement are advances to be applied
> against employees' future earned commissions.  If employees are
> advanced commissions, which are not later earned by the
> employees, the Company will adjust the commission advances by
> deducting the unearned portion of the commission advances from
> the employees' future commission payments.**  All references to
> commissions in this Agreement are to commission advances until the
> commissions become earned.

19  CBA at Subsection 15.5.1.1 (emphasis added).

20      In order to adjudicate Sciborski's wage claim, this Court must determine whether

21  the deductions from her paycheck were deductions from earned wages, or whether the

22  deductions were from *advances* on commissions, which is perfectly legal.  *See Steinhebel*

23  *v. Los Angeles Times Communications,* 126 Cal.App.4th 696, 705-06 (2005) [An advance

24  is by definition not a wage, and where a contract defines commission payments as

25  unearned advances on commissions, an employer may deduct any unearned advances from

26  future advances on commissions].   That issue can only be resolved by interpreting the

27  CBA's detailed provisions that govern commission advances and payments.

28  //

1    Sciborski correctly notes that Section 301 does not preempt state law rights and

2   obligations that are "independent" of a CBA. *Cramer v. Consolidated Freightways Corp.*,

3   255 F.3d 683 (9th Cir. 2001). However, Section 301 preemption cannot be avoided

4   simply by citing provisions of state law that might be applicable in ruling on the legality of

5   actions taken under the CBA. Indeed, the Supreme Court has expressly stated that a state

6   law claim is only "independent" of a CBA if the claim can be resolved without interpreting

7   the agreement itself. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262 (1994). The

8   fact that state law principles are applied to the CBA does not render the case to be

9   "independent" for Section 301 preemption purposes. *Lingle v. Norge Div. of Magic Chef,*

10  *Inc.*, 486 U.S. 399, 407 & n.7 (1988).[2]

11    Circuit courts considering state law claims for wage and hour issues routinely find

12  that interpretation of the agreement is necessary if the CBA addresses those same subjects.

13  *See Firestone v. Southern Cal. Gas Co.,* 219 F.3d 1063, 1066 (9th Cir.2000) [the state

14  claim is not independent of the CBA because the parties "disagree on the meaning of the

15  terms in the collective bargaining agreement for purposes of California law."]; *Penn.*

16  *Fed'n of the Brotherhood of Maintenance of Way Employees v. National R.R. Passenger*

17  *Corp.,* 989 F.2d 112, 116 (3d Cir.1993) [finding "travel time" compensation statute

18  preempted due to need for CBA interpretation]; *Nat'l Metalcrafters v. McNeil,* 784 F.2d

19  817, 824 (7th Cir.1986) [state law claim for vacation pay preempted unless "the particular

20  contractual provision is so clear as to preclude all possible dispute over its meaning"].

21    Here, Sciborski's rights regarding commissions, and PBD's right to deduct

22  unearned advances from future payments, are specifically governed by the detailed

23  provisions of the CBA. As such, this Court will have to interpret the CBA to determine if

24  PBD complied with whatever obligations it had to pay Sciborski wages, and to determine

25  ───────────────────────

[2] Importantly, PBD is not arguing that all Labor Code or all wage claims are necessarily
26  preempted by Section 301. Rather, PBD contends that only those claims that cannot be resolved
without interpreting or analyzing the CBA are preempted. (*Lingle,* 486 U.S. 407-08 n.7 [if a state
27  law remedy "required, at least in certain instances, collective bargaining agreement interpretation,
the application of the law in those instances would be preempted ...."].)

28

1    whether any deductions complied with the CBA and/or California law. For this reason

2    alone, Sciborski's wage claim is preempted.

3        **2.    Sciborski's Second Cause of Action for Breach of Contract is**

4                    **Preempted by Section 301, since the Only Contract Applicable to Her**

5                    **Employment is the CBA.**

6        In Sciborski's Second Cause of Action for breach of contract, she contends that

7    PBD's alleged failure pay wages due to her was a breach of "a valid and binding contract

8    for employment wherein Ms. Sciborski would perform various labor and services . . . in

9    exchange for compensation." Complaint at ¶¶ 20-24. It is perhaps understandable that

10   Ms. Sciborski did not attach a copy of the alleged "contract of employment" to her

11   complaint, or otherwise attempt to describe it in any but the most general of terms,

12   because the only "contract" that governed the terms and conditions of her employment

13   was the CBA.

14       Determining whether the "contract" (i.e., the CBA) was breached will necessarily

15   require this Court to interpret the CBA because it is the document that contains the criteria

16   for determining when commission payments become "earned." As a result, Sciborski's

17   contract claim is clearly preempted for this reason alone.

18       **3.    Sciborski's Third Cause of Action[3] for Constructive Discharge in**

19                   **Violation of Public Policy is Preempted by Section 301 Because it also**

20                   **Requires this Court to Interpret the CBA.**

21       Sciborski's constructive discharge claim is based on her allegation that PBD made

22   unlawful deductions from her earned wages – the same allegation that forms the basis for

23   her other claims. As shown above, those claims – and therefore this claim as well – can

24   only be adjudicated by interpreting the CBA to determine whether the underlying factual

25

---

26   [3] Sciborski's complaint contains two causes of action captioned, "Second Cause of Action." All
references in this memorandum to Sciborski's "Third Cause of Action" are to Sciborski's cause of action

27   for Constructive Discharge in Violation of Public Policy, set forth in paragraphs 25-30 of her complaint.

28

1  allegation has merit.

2      In addition, Sciborski's constructive discharge claim will also require this Court to

3  interpret those provisions of the CBA that govern the dismissal of union-represented

4  employees, such as Sciborski, and whether PBD complied with those procedures.  See

5  Article 29 ("Dismissals"), as well as Article 26 ("Grievance Procedure") and Article 27

6  ("Arbitration").[4]  This is yet another reason why Sciborski's constructive discharge claim

7  is preempted.

8  **D.     The Case Law Cited by Sciborski Does Not Support Remand of this Case to**

9  **State Court.**

10     **1.      *Cramer v. Consolidated Freightways* is Distinguishable and Does Not**

11            **Support Remand of this Case to State Court.**

12     In an attempt to avoid preemption, Sciborski cites several cases, each of which is

13  either unpersuasive, distinguishable, or *supports* PBD's preemption argument.

14     First, Sciborski cites *Cramer v. Consolidated Freightways Corp.*, 255 F.3d 683 (9th

15  Cir. 2001), arguing that states may provide rights to workers that apply without regard to a

16  CBA, and that suits to vindicate these rights are preempted only if they require the

17  interpretation of a CBA.  This general proposition is correct, but as shown above,

18  Sciborski's claims against PBD plainly require this Court to interpret the CBA to

19  determine whether the funds that PBD deducted were advances or earned commissions.

20     In *Cramer*, which had nothing to do with any wage-related issues, the Ninth Circuit

21  set forth a standard for determining whether a state law claim interprets, or merely refers

22  to, a collective bargaining agreement.  The employer had placed video cameras and

23  listening devices behind two-way mirrors in the restrooms to detect drug use by

24  employees.  This surveillance equipment was discovered and several employees filed a

25

26  [4] As shown in Article 27, a dispute that cannot be resolve through the grievance process must be
submitted to arbitration.  In the near future, PBD intends to file a Rule 56 motion dismissing this action

27  on grounds that Sciborski's exclusive remedies are the grievance and arbitration procedures in the CBA.
However, this memorandum is limited to addressing removal and federal question jurisdiction issues only.

28

1  class action lawsuit in state court seeking damages and injunctive relief. *Id.* at 688-89.

2  The employer removed the action to federal court and sought dismissal of all the state law

3  claims under Section 301. The district court dismissed the state claims, finding that

4  Section 301 preempted them. The Ninth Circuit disagreed with the district court's finding,

5  holding that the collective bargaining agreement did not "*contemplate the surreptitious*

6  *videotaping plaintiff's challenge[d] in their state law claims ...*" *Id.* at 694-95 [emphasis

7  added].

8       The *Cramer* court reasoned that a claim is not preempted by Section 301 where

9  "the legal character of a claim [is] 'independent' of rights under the collective bargaining

10  agreement ... [and] the bare fact that a collective bargaining agreement will be consulted"

11  does not extinguish the claim. *Id.* at 690-91. Nevertheless, the court noted that the

12  "demarcation between preempted claims and those that survive Section 301's reach is not

13  ... a line that lends itself to analytical precision." *Id.* at 691. However, the Court explained

14  that where a claim involves the "employer's alleged failure to comport with its

15  contractually established duties," it is preempted. *Id.* Thus, "the plaintiff's claim is the

16  touchstone for this analysis ... [and] the need to interpret the CBA must inhere in the

17  nature of the plaintiff's claim." *Id.*

18       Here, Sciborski's wage claim is plainly *substantially dependent* on an interpretation

19  of the CBA's provisions, as they deal with commission advances and adjustments to those

20  advances. Sciborski's union and PBD expressly agreed, *in the CBA*, to detailed provisions

21  governing those issues. As such, *Cramer* is inapplicable here, and Sciborski's wage-

22  related claims are preempted.

23       **2.**     **_Lingle v. Norge Div. of Magic Chef_ is Similarly Distinguishable and**

24                **Does Not Support Remand of this Case to State Court.**

25       In addition to her reliance on *Cramer*, Sciborski also asserts that her state law

26  claims require remand based on the Supreme Court's decision in *Lingle v. Norge Div. of*

27  *Magic Chef,* 486 U.S. 399, 410 (1988). In *Lingle* the U.S. Supreme Court held that as

28  long as a state retaliatory discharge claim does not require interpretation of the collective

1  bargaining agreement, an employee may pursue a state court claim. *Id.* at 410.

2      In *Lingle,* the petitioner was discharged by her employer for filing an allegedly

3  false workers' compensation claim. Lingle filed an action against her employer in the

4  Illinois state court, alleging that she had been discharged for exercising her rights under

5  the Illinois workers' compensation laws. After removing the action to federal court, the

6  employer moved to dismiss on the grounds that the action was preempted by Section 301.

7  The district court dismissed the action, and the court of appeals affirmed. On certiorari,

8  the Supreme Court reversed and held that Section 301 did not preempt application of state

9  law unless such application required the interpretation of a collective bargaining

10  agreement. *Id.* at 413. The Court concluded that plaintiff's claim for retaliatory discharge

11  under Illinois law did not require a court to interpret any term of a collective bargaining

12  agreement because the elements of the claim, as well as the defenses, only involved the

13  conduct and motives of the employer. *Id.* at 407.

14      Similar to *Cramer, Lingle* is inapposite because it involved state-law claims that

15  could be resolved without interpreting the CBA. *Id.* at 410. Here, by contrast, the issue is

16  not the "motivation of the employer." Rather, in order to resolve all of Sciborski's causes

17  of action, the Court must examine the terms of the CBA to determine the nature of the

18  payments made to her, and specifically whether the deductions were adjustments to

19  commission advances, or were instead unlawful deductions from earned wages.

20  Sciborski's claims are, therefore, preempted by Section 301.[5]

---

21      [5] *See also, Allis- Chalmers, supra,* 471 U.S. at 219-20 [allowing claims "involving
22  vacation or overtime pay, work assignment, unfair discharge ... [to] be brought in the first instance
    in state court by a complaint in tort rather than in contract ... would cause arbitration to lose most
23  of its effectiveness as well as eviscerate a central tenet of federal labor-contract law under §301
    that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in
24  the first instance."]) (citation omitted); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562,
    96 S. Ct. 1048 (1976) ["[section] 301 suits encompass those seeking to vindicate 'uniquely
25  personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge."];
    *Smith v. Evening News Ass'n,* 371 U.S. 195, 200, 83 S. Ct. 267 (1962) ["The rights of individual
26  employees concerning rates of pay and conditions of employment are a major focus of the
    negotiation and administration of collective bargaining contracts."]; *Atchley v. Heritage Cable
27  Vision Associates,* 101 F.3d 495, 499-500 (7th Cir. 1996) [claim that employer violated state law
    by delinquently paying wage increases and bonuses completely preempted by Section 301 of the
28  (footnote continued on next page)

1      **3.     Sciborski's Reliance on *Lividas v. Bradshaw* is Misplaced and Does Not**

2           **Support Remand of this Case to State Court.**

3           Sciborski contends that interpretation of the CBA is not required to adjudicate her

4   state law claims against PBD because her claims are allegedly based on "nonnegotiable

5   rights." (Sciborski moving papers at p. 4, lines 19-28.) However, this argument has been

6   rejected by the U.S. Supreme Court in one of the cases cited by Sciborski. In *Lingle*,

7   *supra*, the Supreme Court held that even 'nonnegotiable rights" could be preempted.

8   Specifically, the Court stated:

9           While it may be true that most state laws that are not pre-empted by
            §301 will grant nonnegotiable rights that are shared by all state
10          workers, we note that neither condition ensures non-preemption. *It
            is conceivable that a State could create a remedy that, although*
11          *nonnegotiable, nonetheless turned on the interpretation of a*
            *collective-bargaining agreement for its application. Such a remedy*
12          *would be pre-empted by § 301.*

13  *Lingle, supra*, 486 U.S. 399 at 407-08 n.7 [emphasis added].

14          California state courts are in accord. "Even where a state has expressly or

15  impliedly indicated a right or remedy is 'non-negotiable' and thus not subject to negotiation

16  or inclusion in collective bargaining agreements, preemption will nonetheless occur where

17  in exerting the right in state court, the parties must resort to interpreting the terms of the

18  agreement." *Moreau v. San Diego Transit Corp.*, 210 Cal.App.3d 614, 627 (1989).

19          Moreover, the issue of "non-negotiable" employee rights was the primary issue in

20  *DFEH v. Verizon California*, 108 Cal.App.4th 160, 171 (2003). In that case, the DFEH

21  argued that the issue of whether an employee should be paid for time off under the

22  California Family Rights Act ("CFRA") was not preempted, as the CFRA provides non-

23  negotiable state rights that could not be preempted under the LMRA. The court disagreed.

24  _____

25  (footnote continued from previous page)

26  LMRA]; *Wheeler v. Graco Trucking Corp.*, 985 F.2d 108, 113 (3rd Cir. 1993) [LMRA preempted
    employee's state law claim for wages allegedly due under the collective bargaining agreement.]

27

28

1  "No. Here, the right under state law to the time off may be non-negotiable, but that fact is
2  irrelevant. This is not a case of Verizon denying an employee leave in the face of state
3  law. Here, the state law *itself* implied that the right to be paid for family leave depends on
4  what is negotiated." *Id*. at 171 [emphasis in original]. The Court concluded that the
5  question of whether an employee was entitled to paid time off under the CFRA was in fact
6  barred, because it was "substantially dependent on an interpretation of the collective
7  bargaining agreement" *Id*.

8      Here, Sciborski's stated "non-negotiable" wage-related claims are likewise barred
9  because their resolution is entirely "dependent" upon analysis of the terms of the CBA,
10  because the dispute requires this Court to determine whether deductions were made to
11  earned wages, or were made to commission advances. *Allis-Chalmers Corp., supra*, 471
12  U.S. at pp. 219-20. Therefore, Sciborski's claims cannot be resolved without interpreting
13  the CBA's terms.

14      Sciborski's reliance on *Lividas v. Bradshaw*, 512 U.S. 107 (1994) does not help her
15  cause. In *Lividas*, the employer allegedly violated Labor Code section 203 by failing to
16  timely pay plaintiff's wages upon her termination. As a result, the plaintiff sought
17  statutory penalties equal to one-day's pay for each day that the final paycheck was late.
18  While the Supreme Court recognized that Labor Code section 203 conferred a non-
19  negotiable right on the employee, this finding did not dictate the Court's decision. Instead,
20  the Supreme Court held that Section 301 would not preempt her state-law claim *because it*
21  *could be resolved without interpreting a CBA* (e.g., by simply looking at a calendar to
22  determine how many days late her employer was in paying her.) *Id*. at 124- 125 [emphasis
23  added]. Non-negotiability was *not* the test for determining whether a state law claim is
24  preempted by Section 301.

25  **E.      There is No Basis for an Award of Attorneys' Fees.**

26      Sciborski seeks attorneys' fees incurred in bringing the motion pursuant to 28
27  U.S.C. section 1447(c). As overwhelmingly demonstrated above, the legal authority
28  strongly supports PBD's removal of this case to federal court based on LMRA Section 301

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

11

08 cv 0878 WQH (RBB)

1  preemption.  It is well settled that an award of attorneys' fees upon remand is not

2  warranted where the removal was in good faith in an area where there was a colorable

3  claim for removal.  *See, e.g., People of State of California v. Steelcase, Inc.*, 792 F. Supp.

4  84, 87 (C.D. Cal. 1992); *McCann v. Alaska Airlines, Inc.*, 758 F. Supp. 559, 567 (N.D.

5  Cal. 1991); *Hom v. Service Merchandise Co., Inc.*, 727 F. Supp. 1343, 1345 (N.D. Cal.

6  1990); *Coman v. Int'l Playtex, Inc.*, 713 F. Supp. 1324, 1329 (N.D. Cal. 1989.  Sciborski's

7  request for attorneys' fees should, therefore, be denied.

8                                    **III.**

9                              **CONCLUSION**

10         Federal question jurisdiction is present because this court necessarily must interpret

11  the existing provisions of the CBA in order to resolve this dispute.  Therefore, PBD

12  properly removed this matter to this Court.  Consequently, Sciborski's Motion to Remand

13  should be denied, as should her request for an award of attorneys' fees.

14

15  Dated: June 16, 2008                PAUL, PLEVIN, SULLIVAN &
                                        CONNAUGHTON LLP
16

17                                      By: s/ Aaron A. Buckley
                                        MICHAEL C. SULLIVAN
18                                      email: msullivan@paulplevin.com
                                        AARON A. BUCKLEY
19                                      email: abuckley@paulplevin.com
                                        Attorneys for Defendant
20                                      PACIFIC BELL DIRECTORY

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

08 cv 0878 WQH (RBB)